

FILED
John E. Triplett, Acting Clerk
United States District Court
By casbell at 4:33 pm, Sep 03, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

JEFFREY HOWARD SHARPE,

        Plaintiff,

     v.

ANDREW M. SAUL, Commissioner, Social
Security,

        Defendant.

CIVIL ACTION NO.: 2:19-cv-27

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Antony Saragas ("the ALJ" or "ALJ Saragas") denying his claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision. Doc. 13 at 26. Defendant asserts the Commissioner's decision should be affirmed. Doc. 14 at 23. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## **BACKGROUND**

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on October 13, 2016, initially alleging disability beginning December 13, 2011—but amended to October 1, 2015—due to insomnia, bursitis of the right shoulder, degenerative arthritis, issues with his lumbar spine, torticollis, and cervical spine, alongside gastroesophageal reflux with hiatal hernia, patellofemoral syndrome in his right knee, anxiety, and agoraphobia. Doc. 7-2 at 24 (R. 23). After his claim was denied initially and upon reconsideration, Plaintiff filed a timely

request for a hearing.  On July 16, 2018, ALJ Saragas held a video hearing at which Plaintiff, who was represented by counsel, appeared and testified from Brunswick, Georgia.  Id. at 18 (R. 17).  Monica Sharpe, Plaintiff's spouse, and Mary L. Cornelius, a vocational expert, also appeared at the hearing.  Id.  ALJ Saragas found Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") from October 1, 2015 to Plaintiff's date last insured, December 31, 2016.  Id. at 19 (R. 18).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2 (R. 1).

Plaintiff, born on February 10, 1972, was 46 years old when ALJ Saragas issued his final decision and 44 years old on his alleged disability onset date.  Id. at 29 (R. 28).  He has at least a high school education.  Id.  Plaintiff's past relevant work experience includes work as a fire control technician and electronics engineer.  Id. at 28 (R. 27).

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his

age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his amended alleged disability onset date of October 1, 2015 through his date last insured of December 31, 2016.  Doc. 7-2 at 20 (R. 19).  At step two, ALJ Saragas determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease and history of bursitis in the right shoulder; degenerative joint disease of the right knee; gastroesophageal reflux disease with hiatal hernia; obesity; panic/anxiety disorder; mood disorder; somatoform disorder; agoraphobia; avoidant personality disorder; and insomnia.  Id.  However, at the third step, the ALJ determined that Plaintiff's impairment did not meet or medically equal the severity of a listed impairment. Id. at 21 (R. 20).  The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: no more than occasional balancing stooping, kneeling, crouching, crawling, and climbing ramps and stairs; he cannot climb ladders, ropes, and scaffolds; he should avoid hazards such as unprotected heights and moving mechanical parts; he can do no more than frequent overhead, front, and lateral reaching with right upper extremity; he is limited to unskilled, routine, repetitive tasks and instructions; he can have no more than occasional interaction with coworkers and supervisors and should have no public interaction; and he cannot perform assembly line, fast-paced, high production work.  Id. at 23 (R. 22).  At the next step, the ALJ determined Plaintiff could not perform any of his past work.  Id. at 28 (R. 27).  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of paper inserter, mail sorter, and plumbing hardware assembler, all of which

4

are unskilled jobs at the light exertional level and which exist in significant numbers in the national economy.  Id. at 29–30 (R. 28–29).

## II.     Issues Presented

Plaintiff asserts four enumerations of error: (1) the ALJ did not properly account for his finding of marked limitations in "interacting with others" when assessing Plaintiff's mental residual functional capacity; (2) the ALJ's reasons for affording "no evidentiary weight" to Plaintiff's treating psychiatrist, Dr. Co, are not supported by substantial evidence; (3) the ALJ's reasons for discrediting Plaintiff's wife's and daughter's testimony are not supported by substantial evidence; and (4) the Commissioner did not sustain his burden of establishing there was other work in the national economy Plaintiff could perform.  Doc. 13 at 1.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a

scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.      Whether the ALJ Properly Formulated Plaintiff's Residual Functional Capacity and Accounted for Plaintiff's Marked Social Limitation**

Plaintiff argues ALJ Saragas did not account for his finding of marked limitations in "interacting with others" when he formulated Plaintiff's mental residual functional capacity, which limits Plaintiff to "no more than occasional interaction with coworkers and supervisors" and "no public interaction."  Doc. 13 at 16; Doc. 7-2 at 23 (R. 22).  Plaintiff refers to the ALJ's finding that "[Plaintiff's] 'primary problem appears to be severe social anxiety that exacerbated after his retirement from the military to the point that he has very little interaction with others', mostly 'large crowds of people', while he interacts with family members, including his wife, son, and daughter, and goes to doctors' appointments as needed."  Doc. 13 at 17 (citing Doc. 7-2 at 22 (R. 21)).  This finding is based on the opinion of Dr. Corey, the consultative psychological

examiner, who "concluded [Plaintiff's] ability to interact appropriately was severely limited"; the ALJ adopted his opinion finding a "severe, or marked" limitation in interacting with others. Doc. 7-2 at 22 (R. 21).  Although the ALJ adopted the opinion of Dr. Corey regarding Plaintiff's social limitations, Plaintiff argues the record more accurately reflects Plaintiff's marked limitations "render him almost entirely housebound."  Doc. 13 at 17.  As support, Plaintiff refers to the vocational expert's testimony during the hearing that if an individual could not sustain even occasional interaction with coworkers, supervisors, or the public, this limitation would eliminate all competitive employment.  Doc. 7-2 at 69 (R. 68).

Defendant responds the ALJ provided substantial evidence for his assessment of Plaintiff's social limitations when he considered Dr. Corey's consultative examination, Plaintiff's outpatient hospital records from Kings Bay Medical Center and from St. Mary's Veterans Affairs ("VA") Clinic, Plaintiff's history of conservative treatment, the opinion of the State Agency consultants, and Plaintiff's own subjective complaints.  Doc. 14 at 8–12.  Further, Defendant argues the ALJ did, in fact, account for Plaintiff's marked social limitations by limiting his residual functional capacity to no more than occasional interaction with supervisors and coworkers and no interaction with the public.  Id. at 15.

To begin, the Court notes the responsibility for making the residual functional capacity determination rests with the ALJ.  Compare 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") with Packer v. Comm'r, Soc. Sec. Admin., 542 F. App'x 890, 891–892 (11th Cir. Oct. 29, 2013) ("[A residual functional capacity] determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.  There is no rigid requirement that the ALJ specifically refer

to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)).  A plaintiff's residual functional capacity—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—is an "assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870, n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)–(c), 416.945(a)–(c)).  Here, the ALJ determined Plaintiff's residual functional capacity includes, in relevant part, "no more than occasional interaction with coworkers and supervisors" and "no public interaction."  Doc. 7-2 at 23 (R. 22).

The ALJ relied on the medical record in assessing the severity of Plaintiff's anxiety and agoraphobia.  In assessing Plaintiff's mental impairments, the ALJ found Plaintiff has a marked limitation in interacting with others.  How to apply this finding of a "marked" limitation to the residual functional capacity determination is within the purview of the ALJ.  Still, the ALJ must show his work.  To find that an ALJ's residual functional capacity determination is supported by substantial evidence, it must be shown that the ALJ has "provide[d] a sufficient rationale to link" substantial record evidence "to the legal conclusions reached."  Ricks v. Astrue, No. 3:10-cv-975, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012); Packer v. Astrue, Civil Action No. 11-0084, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work."), aff'd, 542 F. App'x 890 (11th Cir. 2013);

see also Hanna v. Astrue, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review . . . .  Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).  In this case, the Court finds the ALJ provided the requisite "linkage" between the record evidence and his residual functional capacity determination to facilitate the Court's meaningful review of his decision.

The ALJ's determination that Plaintiff can occasionally interact with coworkers and supervisors, but not with the general public, is supported by treatment notes from psychological examiner Dr. Corey, outpatient records from the St. Mary's Veterans Affairs ("VA") clinic, and the State Agency consultant's opinion.  The ALJ acknowledged Plaintiff's statement during his interview with Dr. Corey that his anxiety occurs when he is in large groups of people.  Doc. 7-2 at 22 (R. 21).  Indeed, Dr. Corey noted in his examination, "[Plaintiff] has had discreet periods of anxiety even before he separated from the military, which appear to occur when he is in large groups of people."  Doc. 7-9 at 33 (R. 357).  Further, Dr. Corey wrote during the examination—and the ALJ acknowledged—Plaintiff had not sought mental health treatment, nor did he take any medication other than Benadryl to help him sleep.  Id.  Dr. Corey ultimately wrote, "[Plaintiff's] disorder of anxiety is treatable, though his reluctance to interact with others is more chronic and probably based on personality characteristics."  Id. at 35 (R. 359).  The ALJ's decision clearly shows he fully considered Dr. Corey's examination.

Next, the ALJ acknowledges Plaintiff sought outpatient treatment for social anxiety at the St. Mary's VA clinic.  Doc. 7-2 at 26 (R. 25).  Mental status exams at the VA repeatedly showed eye contact, thought process, mood, affect, speech, concentration, judgment and insight, attitude

and behavior, perceptions, appearance, gait, and posture were all within normal limits.  Doc. 7-13 at 17, 36–37 (R. 560, 579–80).  The VA doctor treated Plaintiff with medications for generalized anxiety and panic disorder; psychotherapy was always deferred.  Id. at 17, 29, 40 (R. 560, 572, 583).  Furthermore, the State Agency consultant concluded that Plaintiff had only moderate limitations in interacting with others.  Id. at 27 (R. 96).  The Agency doctor wrote, "[Claimant] may be anxious but we have no enduring [medical evidence of record] of conditions supporting marked limitations."  Id. at 28 (R. 97).  Although the ALJ ultimately adopted Dr. Corey's "severe limitations" opinion over the State Agency doctor's at step three, when finding Plaintiff had a marked impairment in social interaction, it bears noting that, in determining the residual functional capacity at step four, the ALJ gave some consideration to the State Agency doctor's finding of moderate limitations in social interaction.  Doc. 7-2 at 26 (R. 25) (citing Doc. 7-3 at 27 (R. 96)).  Even so, the ALJ gave special consideration to Dr. Corey's view of marked limits to social interaction, "particularly with regard to larger crowds as the claimant testified," and specifically explained he would "reduce[] the residual functioning to no public interaction."  Id. at 27 (R. 26).  On all other mental limits, the ALJ adopted the State Agency doctor's opinions of moderate limitations.  Id.  In sum, the records the ALJ relied on show Plaintiff's anxiety and social phobia peak when Plaintiff is in large groups; however, this anxiety may be treatable with medication.  Moreover, the ALJ linked the evidence he considered to his residual functional capacity determination that Plaintiff should have no more than occasional interaction with coworkers and supervisors and no interaction with the general public.  Substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not merit any additional limitations to his residual functional capacity.

Plaintiff also contends the ALJ's hypothetical question on which the vocational expert based his testimony omitted Plaintiff's marked limitations in social interaction, despite the ALJ's finding that Plaintiff's mental impairments caused such limitation.  Plaintiff refers to a parallel scenario discussed in the Eleventh Circuit Court of Appeals' decision Winschel v. Commissioner of Social Security, in which the ALJ determined at step two the claimant's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace but did not indicate that medical evidence suggested the claimant's ability to work was unaffected by this limitation or otherwise implicitly account for the limitation in the hypothetical question to the vocational expert.  631 F.3d 1176, 1181 (11th Cir. 2011).  The Eleventh Circuit reversed and remanded, finding where an ALJ asks a vocational expert a hypothetical question that fails to include or otherwise implicitly account for all of a claimant's impairments, the vocational expert's testimony is not substantial evidence and cannot support the conclusion that the claimant can perform significant numbers of jobs in the national economy.  Id.

During the hearing in this case, the ALJ asked the vocational expert the following question:

> [L]et me ask you to presume a hypothetical individual, the same work profile as this particular claimant.  So would have been 39 at the alleged onset date, a high school education, plus college, and the past work you just described.  If an individual like that was reduced to light exertion as defined by our regulations, further reduced however to no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps and stairs, if the person could not climb ropes, ladders or scaffolds, the person should not be involved with workplace hazards, such as unprotected heights or moving mechanical parts.  The person can perform no more than frequent overhead reaching for frequent front and lateral reaching with the upper right extremity.  I want to say—and mentally the person is reduced to only unskilled, routine, repetitive tasks and instructions. **The person should have no more than occasional interaction with coworkers, supervisors, and the public.**  The person should not perform assembly line, fast paced, high production type work.  If the person had those limitations could they perform any of the past work you described for this claimant?

Doc. 7-2 at 67–68 (R. 66–67).  The vocational expert testified the individual could not perform his past work but could perform other jobs in the national economy, including paper inserter, mail sorter, and hardware assembler.  Id. at 68 (R. 67).  Furthermore, the ALJ asked a second hypothetical: "[I]f that same individual was further reduced to no public interaction at all, would that change your answer?".  Id. at 69 (R. 68).  The vocational expert responded that his answer would not change.  Id.  Thus, unlike in Winschel, the ALJ explicitly accounted for Plaintiff's marked limitations in social interaction.  As I have found the ALJ's residual functional capacity determination is supported by substantial evidence, I also find the ALJ properly accounted for Plaintiff's marked limitation in social interaction in posing hypothetical questions to the vocational expert.  Thus, the vocational expert's answers do provide substantial evidence on which the ALJ based his finding that Plaintiff can perform other work existing in significant numbers in the national economy.

The Court's role is not to reweigh the evidence or substitute its judgment for that of the Commissioner but to decide whether the ALJ's decision is supported by substantial evidence.  Dyer, 395 F.3d at 1210.  The Court finds the ALJ's residual functional capacity assessment is supported by the objective medical evidence and the relevant medical source opinions.  The Court also finds the ALJ properly accounted for Plaintiff's marked limitations in social interaction in posing hypothetical questions to the vocational expert.  Accordingly, this enumeration of error is without merit.

**V.     Whether the ALJ Properly Considered the Opinion Evidence of Dr. Co, Plaintiff's Treating Psychiatrist**

Plaintiff asserts ALJ Saragas' decision to impart no weight to Dr. Co's opinion is reversible error.  Doc. 13 at 19.  Dr. Co was Plaintiff's treating psychiatrist, who completed a mental impairment questionnaire which supports a finding of disability.  Doc. 7-13 at 9 (R. 552).

Plaintiff asserts the ALJ's reasons for discrediting Dr. Co's opinion is not supported by substantial evidence

Defendant responds the ALJ properly considered Dr. Co's opinion and rejected it with good cause for being inconsistent with and not supported by the medical record, including Dr. Co's own conservative treatment. Doc. 14 at 19. Further, Defendant argues Dr. Co did not offer his opinion until two and a half years after Plaintiff's date last insured and did not treat Plaintiff until six months after his date last insured. Id. at 21.

In his Reply, Plaintiff argues Dr. Co's opinion is still relevant, even if it is based on an examination made long after a claimant's date last insured. Doc. 17 at 3. Furthermore, Plaintiff reiterates his treatment history was not a valid reason to reject Dr. Co's opinion. Id.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel, 631 F.3d at 1178–79 (11th Cir. 2011) (alterations in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). For claims like Plaintiff's, filed before March 27, 2017, an ALJ must, in certain circumstances, give controlling weight to the medical opinion of a physician who has rendered ongoing treatment to a claimant.[1] 20 C.F.R. § 404.1527(c)(2) (stating that the opinion of a treating physician will be

---

[1]    For claims filed on or after March 27, 2017, adjudicators of Social Security claims are not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

given controlling weight if it is supported by medically acceptable and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record).  A medical opinion "need not be supported directly by all of the other evidence" to be not inconsistent with the record; however, if there is "substantial evidence in the case record that contradicts or conflicts with the opinion[,]" then the opinion is not entitled to controlling weight.  SSR 96-2p.

If the ALJ does not assign controlling weight to the medical opinion, the ALJ must consider: (1) the examining relationship; (2) the treatment relationship; (3) the degree to which an opinion is supported by evidence; (4) consistency with the record as a whole; (5) the physician's specialization related to the medical issues; and (6) any other factors that tend to support or contradict the medical opinion.  Brock v. Comm'r, Soc. Sec. Admin., 758 F. App'x 745, 750 (11th Cir. 2018) (citing to 20 C.F.R. § 416.927(c)).  "Nothing in the regulations requires the ALJ to explicitly discuss each of the factors in his or her decision."  Id.  The ALJ need only "state with particularity the weight given to different medical opinions and the reasons therefor;" if the ALJ does not do so, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

The law of this Circuit establishes a corollary requirement that "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary."  Lewis v. Callahan, 125 F.3d 1436 1440 (11th Cir. 1997) (internal quotations omitted).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  Winschel, 631 F.3d at 1179

(quoting <u>Phillips</u>, 357 F.3d at 1241).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  <u>Lewis</u>, 125 F.3d at 1440.  A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."  <u>Hunter v. Soc. Sec. Admin.</u>, 808 F.3d 818, 823 (11th Cir. 2015).  Even so, "[a]n ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability."  <u>Kerwin v. Astrue</u>, 244 F. App'x 880, 885 (10th Cir. 2007).

As a treating psychiatrist, Dr. Co's opinion was entitled to substantial or considerable weight unless good cause was shown to the contrary.  However, the ALJ gave Dr. Co's opinion "no evidentiary weight because it is inconsistent with claimant's underlying/ongoing conservative treatment history, which appeared to begin with regularity in early 2018 (well after claimant's date last insured—December 2016)."  Doc. 7-2 at 27 (R. 26).  In his mental impairment questionnaire, taken May 9, 2018, Dr. Co opined Plaintiff did not have the ability to perform basic mental work activities and rated him as having extreme functional limitations in maintaining social functioning, concentration, persistence, or pace.  Doc. 7-13 at 13 (R. 556).  Also, Dr. Co assigned Plaintiff a Global Assessment of Functioning score of 35 (referencing major impairment in several areas such as work or school, family relation, judgment, or mood).  <u>Id.</u> at 9 (R. 552).  The treatment Dr. Co recommended, however, was "medication management."  <u>Id.</u>  The ALJ noted this recommendation, along with the conservative treatment Plaintiff began with Dr. Co at the St. Mary's VA clinic.  Doc. 7-2 at 27 (R. 26).  The ALJ also considered that Plaintiff had never been hospitalized or exhibited signs of mental decompensation prior to Plaintiff's date last insured.  <u>Id.</u>  Further, the ALJ found Dr. Co's opinion that Plaintiff had such "poor" cognitive abilities he could not even perform unskilled work was unsupported by the

medical record and belied by Plaintiff's reported activities on the computer, managing bank accounts, and playing video games.  Id.  Finally, the ALJ noted Dr. Co's opinion that Plaintiff became unable to function or work due to his mental impairments prior to his retirement in December 2011.  Id. (citing Doc. 7-13 at 14 (R. 557)).

Substantial evidence supports the ALJ's articulation of good cause to discredit Dr. Co's opinion because it is not supported by Plaintiff's conservative treatment history, which includes both the lack of evidence of hospitalization or decompensation prior to the date last insured, and Plaintiff's treating physician's decisions to manage his symptoms with only medication.  See Schuhardt v. Astrue, 303 F. App'x 757, 759–60 (11th Cir. 2008) (finding substantial evidence supported ALJ's decision to afford little weight to treating physician's opinion because the opinion was contradicted, in part, by the fact claimant received relief from pain medication).  Additionally, Dr. Co's opinion was rendered two and a half years after Plaintiff's date last insured.  See Mullen v. Acting Comm'r of Soc. Sec., 723 F. App'x 970, 971–72 (11th Cir. 2018) (finding substantial evidence supported ALJ's decision to disregard treating physician's opinion because the opinion was issued nearly two years after the period between claimant's onset date and date last insured); but see Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir. 1983) (holding physician's opinion based on an examination years after the date last insured was relevant to the disability claim and needed to be considered); see also SSR 83-20, 1983 WL 31249 ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination.").  Despite the time between the date last insured, the commencement of Dr. Co's treatment relationship with Plaintiff, and the issuance of Dr. Co's opinion, the ALJ still considered Dr. Co's opinion.  Doc. 7-2 at 27 (R. 26).  Importantly, the ALJ noted Dr. Co's

opinion is inconsistent with Plaintiff's ongoing treatment, which includes Dr. Co's consultation notes, along with Dr. Corey's records and the VA clinic exams, which the Court discussed above and which conflict with the severity of Dr. Co's mental impairment questionnaire and Plaintiff's subjective complaints.  See Womble v. Comm'r of Sec. Sec., 705 F. App'x 923, 926–28 (11th Cir. 2017) (finding substantial evidence supported ALJ's decision to discredit opinions of two treating doctors because their opinions were "not supported by the objective medical evidence, were rendered after significant gaps in treatment, and contradicted the doctors' own treatment notes).  The State Agency consultant's findings also conflict with the severity of symptoms Dr. Co reports.  The ALJ considered the degree to which the evidence supported Dr. Co's opinion and its consistency with the record as a whole and found the opinion conflicted with the other medical evidence of record.

Because good cause existed for discounting the opinion of Dr. Co, substantial evidence supports the ALJ's decision to assign his opinion no weight.  See Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weigh the treating physician's opinion deserves so long as he articulates a special justification for it.").  Thus, this enumeration of error is without merit.

**VI.    Whether the ALJ Properly Weighed Plaintiff's Subjective Complaints and Plaintiff's Wife's and Daughter's Testimony**

Plaintiff argues the ALJ failed to properly weigh Plaintiff's subjective complaints and the testimony of Plaintiff's lay witnesses, his wife and daughter.  Doc. 13 at 23.  Specifically, regarding Plaintiff's subjective complaints, he argues the ALJ failed to consider reasons why Plaintiff did not comply with treatment or seek treatment consistent with the degree of his complaints.  Id.  And regarding the testimony of Plaintiff's family, the ALJ failed to fully

consider and account for the specifics of their testimony in his residual functional capacity finding.  Id. at 26.

In response, Defendant argues the ALJ relied on substantial evidence in evaluating Plaintiff's subjective complaints when he considered Dr. Corey's consultative examination, Plaintiff's clinical examinations, and the opinion of the State Agency consultant.  Doc. 14 at 8. Additionally, Defendant argues the ALJ's decision assigning the same weight to Plaintiff's wife's and daughter's testimony as to his subjective complaints was proper because the ALJ found the testimony duplicative.  Id. at 14.

Plaintiff replies the ALJ selectively relied on the record to disregard Plaintiff's subjective complaints and failed to consider whether Plaintiff was experiencing a good day the day of his evaluation, given the variable and episodic nature of his mental impairments.  Doc. 17 at 5. Also, Plaintiff argues the ALJ's decision finding the lay testimony duplicative is insufficiently explained and fails to address the uncontroverted aspects of their testimony.  Id. at 9.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A).  Rather, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability."  Id.  In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which they limit work capacity, an ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R.

§§ 404.1529(c)(4), 416.929(c)(4).  Pertinent evidence includes evidence of daily activities; the

location, duration, frequency, and intensity of pain and other symptoms; precipitating and

aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to

alleviate pain or other symptoms; treatment other than medication for relief of pain or other

symptoms; and measures taken to relieve pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).

If an ALJ fails to credit a claimant's testimony about his symptoms, the ALJ "must

articulate explicit and adequate reasons for doing so."  Holt v. Sullivan, 921 F.2d 1221, 1223

(11th Cir. 1991).  This process is called a subjective symptom evaluation and is meant to assess

whether a claimant's self-described limitations are consistent with and supported by the record.

SSR 16-3p.  The subjective symptom evaluation is wholly "the province of the ALJ."  Mitchell

v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d

1208, 1212 (11th Cir. 2005)).  Reviewing courts "will not disturb a clearly articulated [subjective

symptom evaluation] supported by substantial evidence."  Id. (citing Foote v. Chater, 67 F.3d

1553, 1562 (11th Cir. 1995)).

The ALJ considered Plaintiff's testimony about the intensity, persistence, and limiting

effects of his symptoms—alleging he is unable to sustain a full time job due to the inability to lift

more than 10 pounds, bend, squat, or reach at all, and walk no more than 10 minutes, nor can he

interact with others or leave his home—and found the severity of his alleged physical and mental

impairments were not fully supported by clinical exam findings and other relevant evidence in

the record.  Doc. 7-2 at 24 (R. 23).  The ALJ afforded his testimony partial weight, finding it was

belied by the 2011 outpatient medical records from Kings Bay Medical Center, a 2012 VA award

letter, the lack of medical treatment or evaluation until January 2017 when he underwent

physical and mental consultative evaluations, medical records from St. Mary's VA clinic in mid-2017, a November 2017 examination by Dr. Coleman, the State Agency consulting doctors' opinions, and Plaintiff's own daily living activities.  Id. at 24–26 (R. 23–25).  Plaintiff's August 2011 records from Kings Bay Medical Center show Plaintiff reported his lower back pain was under control on his medical regimen, he denied back pain and muscle weakness, and he reported he had been exercising and lost 10 pounds by walking and biking.  Doc. 7-12 at 48 (R. 534).  He was reported as "well-appearing," "well-developed," and "well-nourished" and was returned to active full-duty work.  Id.  Plaintiff returned in October 2011 with shoulder pain, and examination showed tenderness with palpation and abduction but no erythema or swelling, no motor function or sensory deficit, and normal reflexes and peripheral nerves; he was prescribed prednisone for pain.  Id. at 53 (R. 539).  The VA award rated Plaintiff at 60% disability due to physical conditions but none to mental illness.[2]  Doc. 7-7 at 4 (R. 211).  Additionally, Plaintiff's functionally related physical conditions were stated as mildly limited.  Id. at 5 (R. 212).  Plaintiff's next medical treatment took place in January 2017, where he underwent an internal disability consultative examination for several multiple and physical complaints.  Doc. 7-9 at 10, 19 (R. 334, 343).  The physical exam was abnormal for some limited range of motion in the back, neck, and right shoulder, right elbow and forearm, right hip, and right knee, but Plaintiff sustained normal 5/5 strength in his upper and lower extremities, normal 5/5 grip strength,

---

[2]     A decision by another governmental agency "concerning whether an individual is disabled, based on that agency's own rules, does not constitute a [Social Security Administration] decision regarding whether that individual is disabled."  Ostborg v. Comm'r of Soc. Sec., 610 F. App'x 907, 914 (11th Cir. 2015).  Although such evidence "should be considered and is entitled to great weight," it is also non-binding on the Social Security Administration and may be discounted by an ALJ who provides "specific reasons," which "show how he considered and closely scrutinized that [agency] determination."  Id. at 915 (finding substantial evidence supported ALJ's discounting of VA determination "because that determination makes no mention of [Plaintiff's] wide-ranging hobbies and interests" and because the ALJ "correctly explained the VA and [the Social Security Administration] use different criteria for determining disability").

normal range of motion of hands and fingers, no motor function or sensory deficits, intact

reflexes and normal gait, and x-rays of the lumbar spine revealed only mild degenerative change

and mild spondylotic changes.  Doc. 7-9 at 11–29 (R. 335–53).  The ALJ also considered

Plaintiff's reported daily activities, including personal care, repairing computers, caring for a pet

and plants, handling bank accounts, and playing video games.  Id. at 25 (R. 24) (citing Doc. 7-7

at 28, 33 (R. 235, 240); Doc. 7-2 at 50–52 (R. 49–51)).

       During Plaintiff's January 2017 psychological consultative evaluation with Dr. Corey,

Dr. Corey diagnosed Plaintiff with panic disorder, personality disorder, agoraphobia, and having

severe limitation in ability to interact appropriately with others.  Doc. 7-9 at 33 (R. 357).

Thereafter, a mental status examination from St. Mary's VA clinic showed Plaintiff exhibited no

suicidal/homicidal ideations, normal eye contact, thought content, and thought process, mood,

affect, speech, concentration, judgment and insight, attitude and behavior, perceptions,

appearance, gait and posture.  Doc. 7-13 at 15–17 (R. 558–60).  Plaintiff was treated with

conservative measures including medication for generalized anxiety disorder, panic disorder, and

insomnia, and psychotherapy was deferred.  Id.  The November 2017 records from a visit with

Dr. Coleman showed Plaintiff had acute low back pain and gastroesophageal reflux disease, but

normal 5/5 strength, no muscle atrophy, normal pulses, normal gait, normal reflexes, and no

tenderness or edema.  Doc. 7-13 at 2–5 (R. 545–49).  Regarding his physical impairments, the

doctor recommended lifestyle changes, such as exercise, physical therapy, and work with a

chiropractor, but no surgical intervention was recommended.  Id. at 5–6 (R. 548–49).  The State

Agency consulting doctors opined Plaintiff could perform light work with some postural and

manipulative limitations and further opined Plaintiff had moderate limitations in understanding

and applying information, interacting with others, and concentrating and persisting.  Doc. 7-3 at

13–14, 27–30 (R. 82–83, 96–99).  Regarding all mental impairments except for social interaction, the ALJ adopted the State Agency consultants' opinion of moderate limitations in those domains finding the mental assessments—with the exception of the marked limitation to social interaction—were generally consistent with consultative examiner Dr. Corey's opinion and "logically align with a claimant with the conservative treatment history, benign examination findings, and self-reported activities of daily living, shown through the record as a whole." Doc. 7-2 at 27 (R. 26).

Thus, the ALJ showed he fully considered the medical record and specified the evidence that supported his residual functional capacity determination over Plaintiff's allegations.  The ALJ relied both on medical records that undermined Plaintiff's testimony of the severity of his symptoms and the conservative nature of Plaintiff's course of treatment.  See Chatham v. Comm'r of Soc. Sec., 764 F. App'x 864, 868–69 (11th Cir. 2019) (finding ALJ's decision discrediting claimant's subjective complaints supported by substantial evidence because the ALJ explained the complaint were inconsistent with claimant's medical records, her reported daily activities, and the conservative treatment she had received to date).  Indeed, Plaintiff's history of conservative treatment provides substantial evidence to support the ALJ's decision to discredit his subjective testimony.  See Mijenes v. Comm'r of Soc. Sec., 687 F. App'x 842, 849 (11th Cir. 2017) (finding nature of claimant's treatment, which included outpatient medication management for bipolar and mood disorders—with the exception of one inpatient psychiatric evaluation—provided substantial evidence to discredit the claimant's subjective complaints); Pennington v. Comm'r of Soc. Sec., 652 F. App'x 862, 873 (11th Cir. 2016) (finding substantial evidence supported ALJ's conclusion that claimant's conservative treatment undermined his testimony about the severity of his symptoms); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir.

1996) (finding claimant's mild treatment history provided substantial evidence for ALJ's residual functional capacity determination).

Plaintiff asserts in his Reply the ALJ "was required to carefully consider . . . whether the examiner encountered [Plaintiff] on a good day."  Doc. 17 at 5 (citing Tavarez v. Comm'r of Soc. Sec., 638 F. App'x 841, 848 (11th Cir. 2016)).  But in Tavarez, it was clearly shown in the medical record the claimant's arthritis fluctuated, causing the claimant to have good days and bad days.  638 F. App'x at 848.  There, it was error for the ALJ to not consider the fluctuation of the claimant's symptoms when he rejected two conflicting medical opinions—one with mild findings and one with more severe findings.  The Tavarez case is inapposite though, as Plaintiff did not allege during the hearing that his subjective symptoms fluctuate from day to day, and no medical opinions support such fluctuation.

Plaintiff's argument that the ALJ did not properly evaluate the lay witness evidence of Plaintiff's wife and daughter appears, again, to ask this Court to reweigh the evidence the ALJ considered.  Plaintiff's wife testified during the hearing that Plaintiff avoids interacting with others and has only left the house a dozen times in the last six and a half years and that his back issues, which he has had for 10 years, have only gotten worse.  Doc. 7-2 at 58–60 (R. 57–59).  The daughter provided a third-party statement.  Doc. 7-7 at 92 (R. 299).  However, the ALJ found both women's testimony "generally corroborated the claimant's allegations of 'extremely bad' anxiety and back pain that prevents him from performing daily living activities and prevents him from working."  Doc. 7-2 at 24 (R. 23).  The ALJ afforded the lay testimony partial weight equal to that of Plaintiff.  Id.  Plaintiff's enumeration of error here is without merit, as the ALJ shows he weighed the lay testimony and third-party statement, assigned each weight, and provided a reason for accepting or rejecting it.  See De Olazabal v. Soc. Sec. Admin., Comm'r,

579 F. App'x 827, 832 (11th Cir. 2014) (applying harmless error doctrine to ALJ's failure to consider husband's third-party function report in determining the wife's residual functional capacity, because the report was merely cumulative of the wife's testimony and medical evidence in the record). Accordingly, this enumeration of error is without merit.

## VII. Whether the Hypothetical the ALJ Presented to the Vocational Expert was Proper

Plaintiff's fourth argument is an extension of his first three. Plaintiff asserts, because the ALJ's residual functional capacity fails to account for a marked social limitation and improperly disregards the opinion of Dr. Co and lay testimony of Plaintiff's wife and daughter, the hypothetical question posed to the vocational expert was not fully comprised of his impairments and, thus, cannot support the finding that there is other work in the national economy Plaintiff can perform. Doc. 13 at 26. Defendant responds the ALJ did not need to rely on more restrictive hypotheticals if his residual functional capacity assessment matched the hypothetical he asked the vocational expert and was supported by substantial evidence. Doc. 14 at 22.

At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). "Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled." Phillips, 357 F.3d at 1239. "An ALJ may determine whether a claimant has the ability to adjust to other work in the national economy by either applying the grids or using a vocational expert." Mabrey v. Acting Comm'r of Soc. Sec. Admin., 724 F. App'x 726, 730 (11th Cir. 2018) (citing Phillips, 357 F.3d at 1239–40).

24

"When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." Phillips, 357 F.3d at 1240.  "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Moore v. Astrue, 256 F. App'x 330, 332 (11th Cir. 2007) (citation omitted).  Because the Court has found the ALJ provided substantial evidence for his determination of Plaintiff's residual functional capacity—including properly weighing the opinions of Dr. Co, Plaintiff's wife and daughter's testimony, and Plaintiff's subjective complaints—this enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court instructs any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 3rd day of September, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA